# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION
---------------------------------------------------------------------x

In re:

                                  Case No. 19-36359-cgm

**Moises A. Ramon,**                      Chapter 7
**aka Moises Alejandro Ramon Quezada**


                                        **HON. CECELIA G. MORRIS**


     Debtor(s).
---------------------------------------------------------------------x

## RULE 55 OF THE FEDERAL RULES OF CIVIL PROCEDURE AFFIDAVIT

    As attorney for movant admitted to practice before this Court, I represent that upon

information and belief, the debtor is not an infant, incompetent, or in the military.


Dated: September 10, 2019


                              By: /s/ <u>Barbara Whipple</u>
                                    Barbara Whipple, Esq.
                                    Attorney for Secured Creditor

# COMPOSITE EXHIBIT "B"

Copy

# NOTE

APRIL 02, 2007                     CARMEL                                    NY
[Date]                                   [City]                              [State]
32 PALMER TRAIL, CARMEL, NY 10512

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $        366,750.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  BANK OF AMERICA, N.A.


I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of         6.625     %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the        1ST      day of each month beginning on     JUNE 01, 2007 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on      MAY 01, 2037           , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  BANK OF AMERICA, P.O. BOX 9000, GETZVILLE, NY 14068-9000                                  or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $          2,348.35



NEW YORK FIXED RATE NOTE − Single Family

Page 1 of 3

BS5N(NY) (0302)                              VMP MORTGAGE FORMS - (800)521-7291
                    5RNY 04/02/07 8:14 AM

Copy

## 4. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE.  A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT."  WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO.  I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.

I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE.  AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE.  HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THIS NOTE.  IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR IN THE AMOUNT OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    2.0    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

Copy

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Moises A. Ramon_ _____ (Seal)
MOISES A RAMON                                        -Borrower

PAY TO THE ORDER OF

_____ (Seal)
                                  -Borrower

WITHOUT RECOURSE
Bank of America, N.A.

BY _Christina M. Schmitt_ _____ (Seal)
   CHRISTINA M. SCHMITT                                -Borrower
   ASSISTANT VICE PRESIDENT

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

*(Sign Original Only)*

BS5N(NY) (0302)                           Page 3 of 3

5RNY 04/02/07 8:14 AM   ██████





BK 5075 PG 0086

# PUTNAM COUNTY
# RECORDING PAGE
### PAGE 1 OF RECORDED DOCUMENT

DOCUMENT # 1302587
MORTGAGE
MTA'M   2Y  303    93-920.35
CONSIDERATION: 0346,750.00

04/20/2007   12:29:00 P.M.
RECEIPT# 7582   FEES 089.00
DENNIS J. SANT
PUTNAM COUNTY CLERK

LYBER# 5075   PAGE: 86

RESERVE FOR RECORDING INFORMATION
TYPE OR PRINT

| RECORD & RETURN TO: | GRANTOR/MORTGAGOR |
|---|---|
| *Bank of America, N.A.*<br>*1400 Best Plaza Dr. Ste101*<br>*Richmond, VA 23227* | *Ramon, Tuquinagui, Banegas*<br>*to*<br>*Bank of America, N.A.* |

### DO NOT WRITE BELOW THIS LINE

DEED ☐   MTG ☒   SAT ☐   ASMT ☐   CEM ☐   POA ☐   ESE ☐
OTHER _____

| RECORDING FEES | # OF PAGES | 1+ 18 = 19 |
|---|---|---|
| EDP FEE | 10.00 | C/R |
| RCD FEE | 54.00 | |
| STAT CHG | 5.00 | |
| REC MGMT | 20.00 | |
| CROSS REF | | |
| TOTAL | 89.00 | |

( ) MTA FILED   $5.00

( )EAR   $75.00  ( )EAC  $165.00

RESERVE FOR CERTIFICATION

**MORTGAGE/DEED TAX DISTRICTS:**
TOWN OF CARMEL
TOWN OF KENT
TOWN OF PATTERSON
TOWN OF PHILIPSTOWN
TOWN OF PUTNAM VALLEY
TOWN OF SOUTHEAST
APPORTIONMENT MORTGAGE

**MORTGAGE TYPES:**
A    COMMERCIAL/VACANT LAND
B    1-2 FAMILY
C    UNDER $10,000.00
J    CREDIT UNION/ PERSONAL MTG
E    3-6 UNITS
N    EXEMPT

THIS DOCUMENT WAS EXAMINED
PURSUANT TO §315 REAL PROPERTY LAW

_DennisJSant_
DENNIS J. SANT
PUTNAM COUNTY CLERK

### RESERVE FOR CLERK'S NOTES

Revised 01/2006

Copy

BK 5 0 7 5 PG 0 0 0 8 7

**Premier Abstract, Ltd.**
352 Route 202
Somers, NY 10589
914-276-3040
fax 276-3045

Return To:   LOAN ███████████████
             FL9-700-01-01
             JACKSONVILLE POST CLOSING
             BANK OF AMERICA
             9000 SOUTHSIDE BLVD. , BLDG 700, FILE RECEIPT DEPT.
             JACKSONVILLE, FL  32256
Prepared By: TAMIEKA TWITTY
             BANK OF AMERICA, N.A.
             1400 BEST PLAZA DR, STE 101
             RICHMOND, VA  23227



————————————— [Space Above This Line For Recording Da███

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

**(A) "Security Instrument."** This document, which is dated      APRIL 02, 2007
together with all Riders to this document, will be called the "Security Instrument."
**(B) "Borrower."**    MOISES A RAMON, SEGUNDO A TUQUINAQUI AND MARINA BANEGAS

whose address is 109 WILLOW SPUR ,CARMEL NY 10512
                          sometimes will be called "Borrower" and sometimes simply "I" or "me."
**(C) "Lender."**    BANK OF AMERICA, N.A.

will be called "Lender." Lender is a corporation or association which exists under the laws of
THE UNITED STATES OF AMERICA          . Lender's address is 1400 BEST PLAZA DR,
STE 101, RICHMOND, VA 23227

**(D) "Note."** The note signed by Borrower and dated APRIL 02, 2007          , will be called
the "Note." The Note shows that I owe Lender   THREE HUNDRED SIXTY SIX THOUSAND SEVEN
HUNDRED FIFTY AND 00/100

                        Dollars (U.S. $       366,750.00       )

NEW YORK – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®-6(NY) (0005).01   Form 3033 1/01
Page 1 of 17          Initials: SAT MB HR.
VMP Mortgage Solutions, Inc. (800)521-7291      CVNY 04/02/07 8:14 █

Copy

BK5075PG0088

plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by MAY 01, 2037

(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(F) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(H) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions will be called "Applicable Law."

(J) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(K) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(M) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(N) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(P) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Copy

BK5075PG0089

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at

32 PALMER TRAIL                                                                    [Street]

CARMEL                    [City, Town or Village], New York 10512          [Zip Code]

This Property is in PUTNAM                     County. It has the following legal description:

"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

Initials: SAT M B

—6(NY) (0005).01

CVNY 04/02/07 8:14

Page 3 of 17

Form 3033 1/01

Copy

BK5075PG0090

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

Initials: SAIMB HR.

-6(NY) (0005).01
CVNY 04/02/07 8:14 AM

Page 4 of 17

Form 3033 1/01

Copy

## BK5075PG0091

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**
**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

Initials: _SATMB M·R_

VMP®-6(NY) (0005).01

CVNY 04/02/07 8:14 AM

Page 5 of 17

Form 3033 1/01

Copy

BK5075PG0092

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments and Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but

Initials: SAT MB H.R

VMP®-6(NY) (0005).01
CVNY 04/02/07 8:14 A

Page 6 of 17

Form 3033 1/01

Copy

BK5075PG0093

only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection

-6(NY) (0005).01

CVNY 04/02/07 8:14 AM

Page 7 of 17

Initials: S ATMB MR

Form 3033 1/01

Copy

BK5075PG0094

given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use
the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being
made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the
Property to verify that the repair work has been completed to Lender's satisfaction. However, this
inspection will be done promptly. Lender may make payments for the repairs and restorations in a
single payment or in a series of progress payments as the work is completed. Unless Lender and I
agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to
pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or
other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the
repair or restoration is not economically feasible or if it would lessen Lender's protection under this
Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to
Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order
provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to
Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim
and related matters. If I do not answer, within 30 days, a notice from Lender stating that the
insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The
30-day period will begin when the notice is given. In either event, or if Lender acquires the Property
under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance
Proceeds in an amount not greater than the amounts unpaid under the Note and this Security
Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned
premiums that I paid) under all insurance policies covering the Property, if the rights are applicable
to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore
the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not
then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the
Property as my principal residence within 60 days after I sign this Security Instrument. I will
continue to occupy the Property and to use the Property as my principal residence for at least one
year. The one-year period will begin when I first occupy the Property. However, I will not have to
occupy the Property and use the Property as my principal residence within the time frames set forth
above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless
the refusal is reasonable. I also will not have to occupy the Property and use the Property as my
principal residence within the time frames set forth above if extenuating circumstances exist which
are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any
Lease Obligations.**

(a) **Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to
deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so
that it will not deteriorate or decrease in value due to its condition. Unless it is determined under
Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair
the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as
defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to,
or Condemnation of, the Property, I will repair or restore the Property only if Lender has released
those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in
a single payment or in a series of progress payments as the work is completed. If the insurance or
Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the
completion of such repair or restoration.

(b) **Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do
so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may
inspect the inside of the home or other improvements on the Property. Before or at the time an
inspection is made, Lender will give me notice stating a reasonable purpose for such interior
inspection.

—6(NY) (0005).01

CVNY 04/02/07 8:14 AM

Page 9 of 17

Initials: SATHB HR.

Form 3033 1/01

Copy

BK 5075 PG 0095

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance

VMP ®-6(NY) (0005).01
CVNY 04/02/07 8:14 A

Page 9 of 17

Initials: SATHB M.R.
Form 3033 1/01

Copy

BK5075PG0096

would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

Initials: SATMD M.R.

Form 3033 1/01

Copy

## BK5075PG0097

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

### 12. Continuation of Borrower's Obligations And of Lender's Rights.

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

—6(NY) (0005).01
CVNY 04/02/07 8:14 AM                    of 17

Initials: SAT MB H·R

Form 3033 1/01

Copy

BK5075PG0098

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund be reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting

Copy

BK5075PG0099

provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable

VMP®-6(NY) (0005).01

CVNY 04/02/07 8:14 A

Page 13 of 17

Initials: SA TM B H·R

Form 3033 1/01

Copy

BK5075PG0100

Law, If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the
purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan
Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser
unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an
individual party or the member of a class) that arises from the other party's actions pursuant to this
Security Instrument or that alleges that the other has not fulfilled any of its obligations under this
Security Instrument, until such borrower or Lender has notified the other is notified (in the manner required under Section 15 of this
Security Instrument) of the unfulfilled obligation and given a reasonable time period to take
corrective action. If Applicable Law provides a time period which will elapse before certain action
can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The
notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the
demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and
opportunity to take corrective action provisions of this Section 20. All rights under this paragraph
are subject to Applicable Law.

21. Continuation of Borrower's Obligations to Maintain and Protect the Property. The
federal laws and the laws of New York State that relate to health, safety or environmental protection
are called "Environmental Law." Environmental Law classifies certain substances as toxic or
hazardous. There are other substances that are considered hazardous for purposes of this Section 21.
These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic
pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and
radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the
substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances."
"Environmental Cleanup" includes any response action, remedial action, or removal action, as
defined in Environmental Law. An "Environmental Condition" means a condition that can cause,
contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not
allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the
Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of
Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I
will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting
the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental
Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a
condition that adversely affects the value of the Property. The promises in this paragraph do not
apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances
that are generally recognized as appropriate for normal residential use and maintenance of the
Property (including, but not limited to, Hazardous Substances in consumer products). I may use or
store these small quantities on the Property. In addition, unless Environmental Law requires
removal or other action, the buildings, the improvements and the fixtures on the Property are
permitted to contain asbestos and asbestos-containing materials if the asbestos and
asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by
hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or
other action by any governmental or regulatory agency or private party involving the Property and
any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any
Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or
threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or
release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any
governmental or regulatory authority, or any private party, notifies me that any removal or other
remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all
necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental
Cleanup.

NON-UNIFORM COVENANTS
I also promise and agree with Lender as follows:

22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as
provided in Section 18 of this Security Instrument, if all of the conditions stated in

VMP®-6(NY) (0005).01

CVNY 04/02/07 8:14 A

Page 14 of 17

Initials: SATMP, M.R.

Form 3033 1/01

Copy

BK5075PG0101

subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in section 15 of this Security Instrument, a notice that states:

    (1) The promise or agreement that I failed to keep or the default that has occurred;

    (2) The action that I must take to correct that default;

    (3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

    (4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

    (5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

    (6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

Initials: SATMB MR.

Form 3033 1/01

Copy

## BK5075PG0102

,25. **Borrower's Statement Regarding the Property [check box as applicable].**

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____          _____ (Seal)
as witness only                                              MOISES A RAMON                    -Borrower

_____          _____ (Seal)
                                                                                                                      -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                            MARINA BANEGAS                  -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                            SEGUNDO M FUQUINAQUI          -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                                                        -Borrower

VMP®  -6(NY) (0005).01                          Page 16 of 17                              Form 3033 1/01

CVNY 04/02/07 8:14

Copy

BK5075PG0103

STATE OF NEW YORK,    *Westchester*                    County ss:

On the 2ud day of April, 2007 before me, the undersigned, a notary public in and for said state, personally appeared

*Moises A. Ramon, Segundo A. Tuquinagui and Maria Banegas.*

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information:    S44.6B2L32

JENNIFER M. HERODES
Notary Public, State of New York
No. 02HE5038675
Qualified in Dutcress County
Term Expires: 02/21/20

Copy

BK5075PG0104 **LAWYERS TITLE**
INSURANCE CORPORATION

### SCHEDULE A

ALL that certain plot, piece or parcel of land, situate, lying and being in the Town of Kent, County of Putnam and State of New york, shown and designated as Lots 1 and 2 in Block N on a certain map entitled, "Map of a portion of the premises owned by Hill and Dale Country Club, Inc., Carmel, New York", and filed in the Putnam County Clerk's Office on July 14, 1931 as Map No. 108A, said parcel being more particularly bounded and described as follows:

BEGINNING at a point on the easterly side line of Palmer Trail, at the southwesterly corner of Lot 3 shown on said map, said point being the northwesterly corner of Lot 2 and the herein described parcel, said point also bears North 6 degrees 24' 00" West 16.39 feet from a stone monument;

THENCE along the southerly line of said Lot 3, South 88 degrees 04' 31" East 149.11 feet to the southeasterly corner of said Lot 3 and the westerly side line of Hemlock Street;

THENCE along the westerly side line of said Hemlock Street, the following courses and distances:
South 10 degrees 15' East, 175.00 feet and
South 40 degrees 49' West, 69.17 feet to a point on the northerly side line of said Palmer Trail;

THENCE along the northerly side line of said Palmer Trail, the following courses and distances:
North 49 degrees 12' West 24.70 feet and
North 71 degrees 34' 30" West, 143.93 feet to a "X" out in a rock at the easterly side line of said Palmer Trail;

THENCE along the easterly side line of said Palmer Trail, the following courses and distances:
North 8 degrees 18' East 153.25 feet to a stone monument and
North 6 degrees 24' West 16.39 feet to the point and place of BEGINNING.

*For Conveyancing Only*
*Together with all right, title and interest of, in and to any streets and roads abutting the above described premises.*

Our policies of title insurance include such buildings and improvements thereon which by law constitute real property, unless specifically excepted therein. Now is the time to determine whether we have examined all of the property and easements which you desire to be insured. If there are appurtenant easements to be insured, please request such insurance. In some cases, our rate manual provides for an additional charge for such insurance.



03/19/2007 10:44 FAX

Copy

BORR: RAMON

FUND
DATE: 10/15/2012

*CHAMELEON*

Recording Requested By:
Bank of America
Prepared By: Diana De Avila
800-444-4302
When recorded mail to:
Bank of America, N.A.
Document Processing Mail Code:TX2-979-
01-19 Attn:Assignment Unit
4500 Amon Carter Blvd.
Fort Worth, TX 76155

Property Address:
32 PALMER TRAIL
CARMEL, NY 10512
Property Location:
Township of KENT
NY0-AM  218803594  C  1/2/2013



## ASSIGNMENT OF MORTGAGE

For Value Received, BANK OF AMERICA, N.A.
, the undersigned holder of the Mortgage described below (herein "Assignor") whose address is 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063 does hereby grant, sell, assign, transfer and convey unto NATIONSTAR MORTGAGE LLC whose address is 350 HIGHLAND DRIVE, LEWISVILLE, TEXAS 75067 all beneficial interest under that certain security instrument described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said security instrument.

Original Lender:      BANK OF AMERICA, N.A.
Made By:              MOISES A RAMON, SEGUNDO A TUQUINAQUI AND MARINA BANEGAS
Date of Mortgage:     4/2/2007
Original Loan Amount: $366,750.00
Section: 44.6    Lot: 32    Block: 2
Recorded in Putnam County, NY on: 4/20/2007, book 5075, page 0086 id instrument number [REDACTED]
This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below:

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated:
*1-4-13*

BANK OF AMERICA, N.A.

By: _____
      David DeWaard              ,
      Assistant Vice President

State of California
County of Ventura
On __JAN 04 2013__ before me, *Kathy Serrano*_____, Notary Public, personally
appeared _____David DeWaard_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public: _____Kathy Serrano_____    (Seal)
My Commission Expires: _____12/27/15_____



KATHY SERRANO
Commission # 1962571
Notary Public - California
Los Angeles County
My Comm. Expires Dec 27, 2015

COPY

# EXHIBIT "C"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

IN RE:                                                                      CASE NO.: 19-36359-cgm
                                                                                                CHAPTER 7

**Moises A. Ramon,**
**aka Moises Alejandro Ramon Quezada**

         Debtor.

---------------------------------------------------------------x

---

**RELIEF FROM STAY - REAL ESTATE AND**
**COOPERATIVE APARTMENTS**

---

I, _Mary Gracia, Assistant Secretary_
<NAME AND TITLE> OF

NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER
NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER (HEREINAFTER, "MOVANT"), HEREBY
DECLARE (OR CERTIFY, VERIFY, OR STATE):

### BACKGROUND INFORMATION

1. REAL PROPERTY OR COOPERATIVE APARTMENT ADDRESS WHICH IS THE SUBJECT OF THIS
MOTION: 32 Palmer Trail, Carmel, NY 10512

---

2. LENDER NAME: NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER

3. DATE OF MORTGAGE <MM/DD/YYYY>: 04/02/2007

---

4. POST-PETITION PAYMENT ADDRESS:  Nationstar Mortgage LLC d/b/a Mr. Cooper, Attn: Bankruptcy Dept.,
PO Box 619094, Dallas, TX 75261-9741

---

### DEBT/VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AT THE TIME OF
FILING THE MOTION: $348,985.40
(Note: this amount may not be relied on as a "payoff" quotation.)

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT:
$292,000.00

7. SOURCE OF ESTIMATED VALUATION:
   Debtor's Schedule D

## STATUS OF DEBT AS OF
## THE PETITION DATE

8. TOTAL PRE-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF PETITION FILING DATE:
$ 348,985.40

    A.    AMOUNT OF PRINCIPAL: $301,198.08

    B.    AMOUNT OF INTEREST: $31,024.87

    C.    AMOUNT OF ESCROW (TAXES AND INSURANCE): $10,224.45

    D.    AMOUNT OF FORCED PLACED INSURANCE EXPENDED BY MOVANT: $0.00

    E.    AMOUNT OF ATTORNEYS' FEES BILLED TO DEBTOR(S) PRE-PETITION: $0.00

    F.    AMOUNT OF PRE-PETITION LATE FEES, IF ANY, BILLED TO DEBTOR(S): $0.00

THE PRE-PETITION DEFAULT AMOUNT IS $60,034.08 BASED UPON 2 MISSED PAYMENTS IN THE AMOUNT OF
$3,314.94 12 MISSED PAYMENTS IN THE AMOUNT OF $3,314.61; 4 MISSED PAYMENTS IN THE AMOUNT OF $3,407.22

9. CONTRACTUAL INTEREST RATE: 6.63%         (If interest rate is (or was) adjustable, please list the
rate(s) and date(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this
form; please list the exhibit number here: _____.)

10. PLEASE EXPLAIN ANY ADDITIONAL PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO
DEBTOR'S/DEBTORS' ACCOUNT AND NOT LISTED ABOVE: Corporate Advances $6,538.00

(If additional space is needed, please list the amounts on a separate sheet and attach the sheet as an exhibit to
this form; please list the exhibit number here: _____.)

## AMOUNT OF ALLEGED POST-PETITION DEFAULT
## (AS OF 08/21/2019)

11. DATE LAST PAYMENT WAS RECEIVED: 02/12/2018

12. ALLEGED TOTAL NUMBER OF PAYMENTS DUE POST-PETITION FROM FILING OF PETITION THROUGH
PAYMENT DUE ON N/A:  N/A

13. PLEASE LIST ALL POST-PETITION PAYMENTS ALLEGED TO BE IN DEFAULT:

| ALLEGED PAYMENT DUE DATE | ALLEGED AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED (IF ANY) |
|---|---|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A |

| N/A | N/A | N/A | N/A | N/A | N/A | N/A |
|-----|-----|-----|-----|-----|-----|-----|
| N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| TOTALS: | N/A | N/A | N/A | N/A | N/A | N/A |

14. AMOUNT OF MOVANT'S ATTORNEYS' FEES BILLED TO DEBTOR FOR THE PREPARATION, FILING AND PROSECUTION OF THIS MOTION: $931.00

15. AMOUNT OF MOVANT'S FILING FEE FOR THIS MOTION: $ 181.00

16. OTHER ATTORNEYS' FEES BILLED TO DEBTOR POST-PETITION: $750.00

17. AMOUNT OF MOVANT'S POST-PETITION INSPECTION FEES: $0.00_____

18. AMOUNT OF MOVANT'S POST-PETITION APPRAISAL/BROKER'S PRICE OPINION: $0.00

19. AMOUNT OF FORCED PLACED INSURANCE OR INSURANCE PROVIDED BY THE MOVANT POST-PETITION: $0.00

20. SUM HELD IN SUSPENSE BY MOVANT IN CONNECTION WITH THIS CONTRACT, IF APPLICABLE: $0.00

21. AMOUNT OF OTHER POST-PETITION ADVANCES OR CHARGES, FOR EXAMPLE TAXES, INSURANCE INCURRED BY DEBTOR ETC.: $0.00

### REQUIRED ATTACHMENTS TO MOTION

Please attach the following documents to this motion and indicate the exhibit number associated with the documents.

(1) Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. (Exhibit A.)

(2) Copies of documents establishing proof of standing to bring this Motion. (Exhibit A.)

(3) Copies of documents establishing that Movant's interest in the real property or cooperative apartment was perfected. For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property or cooperative apartment is located in. (Exhibit A.)

**CERTIFICATION FOR BUSINESS RECORDS**

I CERTIFY THAT THE INFORMATION PROVIDED IN THIS FORM AND/OR ANY EXHIBITS ATTACHED TO THIS FORM (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, IMMEDIATELY ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS, WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND WERE MADE BY THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER CERTIFY THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO
THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, IMMEDIATELY ABOVE, ARE TRUE
AND ACCURATE COPIES OF THE ORIGINAL DOCUMENTS.  I FURTHER CERTIFY THAT THE
ORIGINAL DOCUMENTS ARE IN MOVANT'S POSSESSION, EXCEPT AS FOLLOWS:

### DECLARATION

I, _Mary Gracia, Assistant Secretary_
<NAME AND TITLE> OF
NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER
NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, HEREBY DECLARE (OR CERTIFY,
VERIFY, OR STATE) PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY
THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE
MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT _Lewisville_ <CITY/TOWN>, _TX_ <STATE> ON THIS _9_ DAY
OF _September_ <MONTH>, 20 _19_ <YEAR>.

_Mary Gracia_
<PRINT NAME>

Mary Gracia
Assistant Secretary of Nationstar Mortgage LLC
d/b/a Mr. Cooper
Affiant

<TITLE>
Nationstar Mortgage LLC d/b/a Mr. Cooper
Attn: Bankruptcy Dept
8950 Cypress Waters Blvd
Coppell, Texas 75019

# EXHIBIT "D"

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Moises A. Ramon** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK | | |
| Case number | | | |
| (if known) | | | |

☐ Check if this is an
amended filing

## Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property 12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:** List All Secured Claims

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A<br>Amount of claim<br>Do not deduct the<br>value of collateral. | Column B<br>Value of collateral<br>that supports this<br>claim | Column C<br>Unsecured<br>portion<br>If any |
|---|---|---|---|

| 2.1 | **Chase Mortgage** | | $151,552.00 | $399,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**Describe the property that secures the claim:**

**109 Willow Spur Carmel, NY 10512**
**Putnam County**

**3415 Vision Dr**
**Columbus, OH 43219**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a**
**community debt**

☐ An agreement you made (such as mortgage or secured car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

**Opened**
**06/11  Last**
**Active**

Date debt was incurred  **12/01/17**       Last 4 digits of account number       **6488**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

Debtor 1   **Moises A. Ramon**

First Name          Middle Name          Last Name

Case number (if known) _____

| 2.2 | **Nationstar Mortgage LLC** |
|---|---|

Creditor's Name

**Attn: Bankruptcy**
**8950 Cypress Waters**
**Blvd**
**Coppell, TX 75019**

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a**
    **community debt**

**Describe the property that secures the claim:**          $304,484.00          $292,000.00          $12,484.00

**32 Palmer Trail Carmel, NY 10512**
**Putnam County**
**Debtor and 2 other parties on deed**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
    car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

**Opened**
**04/07  Last**
**Active**
Date debt was incurred  **10/13/17**          Last 4 digits of account number          **0696**  _____

| | |
|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | $456,036.00 |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $456,036.00 |

| **Part 2:** | **List Others to Be Notified for a Debt That You Already Listed** |
|---|---|

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy